IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-03085-01/10-CR-S-JFM |
| | ) | |
| BRANDON FRANKLIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Defendants Douglas Franklin, Dewayne Barnhart, Austin Nail, Brandon Franklin, Caitlyn Franklin, Dayne Nail, Jeremy Elliott, and Travis Elliott, have filed motions to dismiss Count One of the Superseding Indictment. (Docs. 132, 134, 140, 142, 146, 150 and 157). Count One charges defendants with violation of 18 U.S.C. §§ 1341 and 1349, that is, a conspiracy to commit mail fraud by devising a scheme to defraud the Food and Drug Administration, to defraud the public, and to obtain money by means of materially false and fraudulent pretenses and representations.

Defendants Douglas Franklin, Jeremy Elliott, Travis Elliott, Brandon Franklin, Caitlyn Franklin, and Dayne Nail, have also filed motions to dismiss Count Two of the Superseding Indictment. (Docs. 133, 143, 147, and 156). Count Two charges defendants with violation of 21 U.S.C. §§ 846, 802(32)(A), 813, and 841(a)(1), that is, conspiracy to distribute controlled substances (analogues).

Defendants Jeremy and Travis Elliott, and Dayne Nail, have also filed motions to dismiss Count Two and Counts Four through Fifteen, of the Superseding Indictment.[1] (Docs. 139 and 149). Counts Four through Ten charge defendants with violation of 21 U.S.C. § 841(a)(1), 802(32)(A), and 813, that is, possession with intent to distribute and distribution of controlled substances (analogues). Counts Eleven through Fifteen charge defendants with violation of 21

---

[1] Defendants Jeremy and Travis Elliott (doc. 139), and Dayne Nail (doc. 149), have titled their motions, "Motion to Dismiss All Counts of Indictment Alleging Violations of 21 U.S.C. § 841 Based on Alleged 'Analogue' Substances as That Term is Defined Under 21 U.S.C. § 802(32)." The Court will refer to the motions as "Motion to Dismiss Count Two and Counts Four through Fifteen of the Superseding Indictment".

U.S.C. § 856(a)(1), that is, maintaining a place for the purpose of storing and distributing controlled substances (analogues).

The Government has filed suggestions in opposition to the defendants' motions to dismiss Count One, Count Two, and Counts Four through Fifteen of the Superseding Indictment. (Doc. 166).

## Standard of Review

The Eighth Circuit has set the following standard of review regarding a motion to dismiss based upon the sufficiency of an indictment:

> An indictment adequately states an offense if "it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted."

United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008) (quoting United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002)). An indictment is normally sufficient if its language tracks the statutory language. Hamling v. United States, 418 U.S. 87, 117 (1974).

## Motions to Dismiss Count One

Defendants argue that Count One of the Superseding Indictment is duplicitous because the Government has inappropriately joined two or more distinct and separate offenses in a single count. Where a single count in an indictment encompasses two or more distinct and separate offenses, counsel may move to dismiss the faulty count or may request that the trial court require the Government to elect the offense for which it intends to present proof. See United States v. Aguilar, 756 F.2d 1418, 1421 (9th Cir. 1985). The ban against duplicitous indictments is derived from the following four concerns: prejudicial evidentiary rulings at trial, the lack of adequate notice of the nature of the charges against defendant, prejudice in obtaining appellate review and prevention of double jeopardy, and the risk of a jury's non-unanimous verdict. Duplicitous indictments may prevent jurors from acquitting on a particular charge because they decide to convict on another charge that is improperly lumped together with the offense in a single count.

Here, defendants allege Count One charges not only a conspiracy to defraud the Food and Drug Administration, but also a conspiracy to defraud the general public. Defendants argue that should the jury return a verdict of guilty, it would be impossible to determine whether or not all

2

twelve jurors agreed as to whether the Food and Drug Administration or the public were defrauded.  See United States v. Morse, 785 F.2d 771, 774 (9th Cir. 1986).

Defendants further argue that Count One of the Superseding Indictment should be dismissed as a matter of law because it fails to state an offense.  The Supreme Court has defined the term "scheme to defraud" by explicitly reading a materiality requirement into the fraud statutes.  The court explained that, in mail and wire fraud cases, prosecutors must establish a scheme that meets the common law definition of fraud.  The court defined "materiality" as when:

> (a) A reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or
>
> (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

 See Neder v. United States, 527 U. S. 1, 21 n. 5 (1999).

Defendants argue that it is the Government's position in Count One of the Superseding Indictment that the substances in question should not be for human consumption.  Therefore, one would have to believe that the Government would agree that the label is a truthful statement.  However, even assuming arguendo that the statement is misleading, how can it be material if the harm is caused by the public disregarding the label?  Defendants assert that as a matter of law a statement cannot be material unless a reasonable man would rely on the statement and act in reliance on it.  Defendants argue the opposite is true in this case because the Government alleges the representation was ignored.  Defendants suggest that where it is alleged that the victim is a government agency, it would be absurd to suggest that the Food and Drug Administration materially relied on the statement.  Defendants argue that as alleged in the Superseding Indictment, the statements cannot be material as a matter of law.  (Doc.132 at 3-4).

Count One of the Superseding Indictment alleges a single conspiracy to defraud the Food and Drug Administration and the general public through the same materially false statements. The objective of the scheme to defraud by material false statements, according to Count One, was to obtain money for the defendants.  The defendants assert that there are multiple conspiracies contained within Count One and that the charge must be dismissed.  However, that claim is dependent upon the evidence presented at trial.  The question of whether there is a single

conspiracy or multiple conspiracies is one that a jury must determine. United States v. Clay, 579 F.3d 919, 931 (8th Cir. 2009); United States v. England, 966 F.2d 403, 406 (8th Cir. 1992).

If after presentation of the evidence at trial, defendants do raise a valid factual argument supporting their multiple conspiracy claim, the trial court should have the ability to cure the issue by fashioning an appropriate jury instruction which would require jury unanimity as to whether the Food and Drug Administration or the general public is the victim of the scheme to defraud. United States v. Pietrantonio, 637 F.3d 865 (8th Cir. 2011); United States v. Nattier, 127 F.3d 655, 657 (8th Cir. 1997).

In United States v. Rabinowitz, the Eighth Circuit considered and rejected the same duplicity argument raised by the defendants here. 56 F.3d 932, 933 (8th Cir. 1995). The Eighth Circuit did not reach the duplicity question because the district court gave a limiting instruction that required jury unanimity. Id. The district court in Rabinowitz instructed the jury on the first count, which alleged a conspiracy to defraud and impede the IRS, that "if the Government only proved a conspiracy to commit one of the two offenses, the jury must unanimously agree on which offense the defendants conspired to commit." Id. Here, if necessary, government counsel should easily be able to fashion an appropriate proposed jury instruction for the District Judge to consider and read to the jury in order to address any duplicity issues that may arise after presentation of all of the evidence.

The determination of whether a single conspiracy or multiple conspiracies exist depends on "whether there was 'one overall agreement' to perform various functions to achieve the objectives of the conspiracy." United States v. Massa, 740 F.2d 629, 636 (8th Cir. 1984). Whether there was one overall agreement is determined by a totality of the circumstances, which includes "the nature of the activities involved, the location where the alleged events of the conspiracy took place, and the time frame in which the acts occurred." United States v. McCarthy, 97 F.3d 1562, 1571 (8th Cir. 1996). Moreover, a "single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." United States v. Smith, 450 F.3d 856, 860 (8th Cir. 2006). Further, "a conspiracy with multiple objectives is not the same thing as multiple conspiracies." United States v. Pullman, 187 F.3d 816, 820-21 (8th Cir. 1999). Finally, a reversal will occur only if the evidence adduced at trial does not support a finding of a single conspiracy, and the defendant can demonstrate he was prejudiced by the evidence. United States

v. Benford, 360 F.3d 913, 914 (8th Cir. 2004). "Whether the government's proof at trial established only a single conspiracy or multiple conspiracies is a question of fact, which we review for clear error." Id. (internal quotations omitted). Prejudice is established upon a showing that: (1) the evidence relating to the other conspiracies had prejudicial spillover effects as to the conspiracy charged, (2) the indictment provided insufficient notice of what evidence would be provided against the defendant at trial, or (3) the indictment was so vague as to risk subsequent prosecution for the same conduct. United States v. Pizano, 421 F.3d 707, 720 (8th Cir. 2005).

The Government cites United States v. Radtke, 415 F.3d 826 (8th Cir. 2005) in support of its argument. The Court finds Radtke to be persuasive here. In Radtke, the Eighth Circuit considered and rejected a factually analogous duplicity argument. Id. at 838. The defendants argued that the Government failed to prove that a fraud with two sets of victims, the IRS and union workers, involved a single conspiracy. Id. The defendants' scheme involved a construction company that paid employees using "cash checks" from which no taxes or union dues were withheld. Id. at 833. Since the fraud against the union workers and the IRS depended upon the same mechanism—the use of "cash checks", took place in similar locations over a similar time frame, and involved the same conspirators, the Eighth Circuit concluded that the evidence proved a single conspiracy. Id. at 838-39.

Here, the Government asserts that its evidence will demonstrate the conspirators enriched themselves through a scheme that relied upon identical material misstatements of fact designed to simultaneously defeat FDA regulatory scrutiny and lure customers to purchase a clandestine "legal" high. Specifically, the conspirators falsely claimed that "Kryp2nite" was "incense" and "not for human consumption" in order to escape the requirements of the Food, Drug, and Cosmetic Act and to provide consumers with an incentive to purchase a "legal" high, when in fact "Kryp2nite" was a drug and was never legal to possess for human consumption. These materially false statements were repeated every time "Kryp2nite" was distributed to a retail outlet and every time a head shop or retail outlet sold "Kryp2nite" that the Franklins' mailed to co-conspirators. Had the conspirators disclosed the truth, that "Kryp2nite" was manufactured in a clandestine laboratory as a drug intended to get a customer high, "Kryp2nite" would have been regulated by the FDA and the public would not have purchased it as a "legal" high. If the Government's description of the evidence it will present is accurate, then the evidence would

5

support a single conspiracy theory. However, as indicated above, a carefully drafted jury instruction would likely cure any claim that there were multiple conspiracies involved. Consequently, the Court concludes that each of the defendants' motions to dismiss Count One of the Superseding Indictment fall short and should therefore be denied.

**Motions to Dismiss Count Two and Counts Four through Fifteen**

Defendants next argue that Count Two and Counts Four through Fifteen of the Superseding Indictment should be dismissed. The defendants allege that the Analogue Act, Title 21, United States Code, Section 813, is void for vagueness because of the use of the words "substantially similar".

Defendant Douglas Franklin claims the "constitutional violation with regards to the statute stems from the vagueness of the term 'substantially similar.'" Defendant Douglas Franklin concludes that there "is no way under the present statutory scheme that a person of ordinary intelligence could know if a substance is not similar, similar, or substantially similar to a scheduled controlled substance." (Doc. 133 at 3).

Defendants Jeremy and Travis Elliott argue that the words "substantially similar" render the Analogue Act void for vagueness on its face, because the phrase "substantially similar" has no "accepted meaning or determination in the scientific community." (Doc. 139 at 2). Defendants Jeremy and Travis Elliott further argue that the absence of a "consensus in the scientific community that UR-144 and XLR-11 have chemical structures that are substantially similar to JWH-018," renders the Analogue Act unconstitutionally vague as applied to this case. (Doc. 139 at 3).

The Analogue Act states that "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." 21 U.S.C. § 813. The Analogue Act defines the term controlled substance analogue as follows:

> Except as provided in subparagraph (C), the term "controlled substance analogue" means a substance—
>
> > (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
> >
> > (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the

> stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
>
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

"Under [the Analogue Act], a drug becomes a controlled substance if it has a chemical structure substantially similar to that of a controlled substance [in schedule I or II], and either has a substantially similar effect on the user's central nervous system, or a relevant someone [e.g., a defendant] represents that it has or intends it to have such an effect." United States v. McKinney, 79 F.3d 105, 107-108 (8th Cir. 1996), vacated on unrelated grounds, 520 U.S. 1226 (1997). In McKinney, the Eighth Circuit stated "[b]ecause manufacturers of illegal drugs have become adept at tinkering with the molecular structure of [scheduled] controlled substances while retaining the effects that those substances produce, the analogue statute is aimed at prohibiting innovative drugs before they are specifically listed in the schedules as controlled substances." McKinney, 79 F.3d at 107. A requirement that the Government identify and label each analogue individually before a prosecution could be pursued would essentially eviscerate the analogue statute, and such an argument has been repeatedly rejected by federal courts, including the Eighth Circuit. See United States v. Washam, 312 F.3d 926, 932 (8th Cir. 2002) ("Congress did not state that distributors of analogues must be warned prior to enforcement of the statute."); United States v. Sullivan, 714 F.3d 1104, 1107 (8th Cir. 2013) ("The CSAEA does not, however, require the DEA to classify a substance as a controlled substance analogue before the substance falls under its purview.")

In addition to satisfying the definition of an analogue as set forth in 21 U.S.C. § 802(32)(A), the Government must prove, at trial, that: (1) the defendants knew they were distributing (or possessing with the intent to distribute) controlled substance analogues, and (2) that the analogues were intended for human consumption. See 21 U.S.C. § 813; See also Sullivan, 714 F.3d at 1107. Further, the Eighth Circuit has adopted the Seventh Circuit's requirement, first explained in United States v. Turcotte, that the defendant must have known that the substance(s) at issue was a controlled substance analogue. United States v. Bamberg,

7

478 F.3d 934, 939-40 (8th Cir. 2007) (discussing United States v. Turcotte, 405 F.3d 515 (7th Cir. 2005)); Sullivan, 714 F.3d at 1107 (8th Cir. 2013).

With respect to defendants' assertion that the Analogue Act statute, 21 U.S.C. § 813, is unconstitutionally vague, the Court recognizes that under the Fifth Amendment's guarantee that every citizen is entitled to due process, "vague statutes are void." Washam, 312 F.3d at 929. The law must provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). Therefore, "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Mazurie, 419 U.S. 544, 550 (1975).

"In determining whether a statute is unconstitutionally vague on the facts at hand," the Court applies a two-part test: 1) "the statute must provide adequate notice of the proscribed conduct"; and 2) "the statute must not lend itself to arbitrary enforcement." Washam, 312 F.3d at 929.

Defendants' assertion that the term "substantially similar" is so vague that it renders the Analogue Act statute unconstitutionally vague is not persuasive. When considering whether the Analogue Act is impermissibly vague, the Court looks to the legal definition of a statutory term, not the scientific definition. See United States v. Brown, 279 F. Supp. 2d 1238, 1240 (S.D. Ala. 2003) ("Since the Analogue Act does not indicate that the term 'substantially similar' is to be defined as it is used scientifically, the court will interpret those words as they are used in everyday language."). In other words, the Court looks to the words and determines if someone of common intelligence would be able to understand what conduct has been prohibited.

The Eighth Circuit has rejected the argument that the phrase "substantially similar" renders the Analogue Act void for vagueness. See McKinney, 79 F.3d at 107. In McKinney, the Eighth Circuit explained that "[w]hile doubts as to the applicability of the language in marginal fact situations may be conceived, we think that the statute gave defendant adequate warning that his conduct was a criminal offense" and that "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." McKinney, 79 F.3d at 108 (internal quotations omitted). Courts have emphasized that numerous other considerations can be taken into account in determining substantial similarity of substances, including the "effects on the human body." See Washam, 312 F.3d at 932; Brown,

279 F. Supp. 2d at 1243 ("[E]ffects on the human body under the second part of the statute may be considered when determining substantial similarity of chemical structure under the first part of the statute.").

Further, the Eighth Circuit held in Sullivan that one of the elements the Government is required to prove at trial is that the defendant "knew he was in possession of a controlled substance analogue." Sullivan, 714 F.3d at 1107. Such a showing may rely, in part, on the defendant's conduct in dealing or addressing the substance with others. Sullivan, 714 F.3d at 1107 (holding that "[a] reasonable juror could find [the defendant] knew he was in possession of a controlled substance analogue" because "[w]hen [a police officer] asked [the defendant] whether the vehicle contained anything illegal, [the defendant] told him the vehicle contained bath powder").

Here, if defendants assert at trial that they had no knowledge of the "substantially similar" quality of the substance, they will have the opportunity to present any evidence they have to demonstrate their lack of knowledge and to convince the jury that they did not know they were in possession of a controlled substance analogue. Sullivan, 714 F.3d at 1107.

Defendants also allege that there is no "consensus" for determining whether one substance is "substantially similar" to another. (Doc. 133 at 3 and Doc. 139 at 2). In support of this allegation, defendants refer to prior expert testimony in other cases regarding the existence of a dispute and a lack of standard methodology. (Doc. 139 at 2). The defendants argue that the same substance can be taken to several different chemists and they will all map the same molecular structure but may not all agree on whether it is "substantially similar" to a controlled substance. This same argument was rejected by the Eighth Circuit in McKinney. The Eighth Circuit in McKinney stated:

> Mr. McKinney argues that the statute is unconstitutionally vague because there is a lack of scientific consensus that aminorex and phenethylamine are analogues . . . He urges that if experts disagree as to whether the chemical structure of one drug is substantially similar to a controlled substance, then the statute is unconstitutionally vague as to that drug.

McKinney, 79 F.3d at 108. The Court then rejected the argument by explaining that, "a reasonable layperson could, for example, have examined a chemical chart and intelligently decided for himself or herself, by comparing their chemical diagrams, whether the chemical structure of two substances were substantially similar." Id. This holding has been reaffirmed by

the Eighth Circuit and followed by numerous courts. See Washam, 312 F.3d at 931 ("We have held that all experts need not agree on whether two drugs' chemical structures are 'substantially similar' in order to affirm a conviction under the Analogue Statute."); United States v. Orchard, 332 F.3d 1133, 1137-38 (8th Cir. 2003); Bamberg, 478 F.3d at 938.

The Court agrees with the Government's position that the defendants' allegation that there is a lack of agreement or consensus on a scientific methodology to determine whether substances are "substantially similar" may be a basis to discredit or impeach an expert's opinion at trial. But it does not render the Analogue Act unconstitutionally vague. See Brown, 279 F. Supp. 2d at 1242 ("[D]iffering methodology in reaching a conclusion on substantial similarity does not render the statute vague, but may tip the scales one way or the other on the issue in the mind of the trier of fact depending on the relative strength of the analysis"). Indeed, the same case that defendants cite for the proposition that the uncertainty of whether a substance is substantially similar in its chemical structure or its effects to a controlled substance, United States v. Forbes, 806 F. Supp. 232 (D. Colo. 1992), has been rejected by the Eighth Circuit. See Washam, 312 F.3d at 932 ("experts need not agree for there to be a finding that a chemical is an analogue"); McKinney, 79 F.3d at 108 (rejecting that there must be a scientific consensus to defeat a vagueness challenge and finding that the proper inquiry is whether "a reasonable layperson could . . . have examined a chemical chart and intelligently decided for himself or herself, by comparing their chemical diagrams, whether the chemical structure of two substances were substantially similar"); see also Brown, 279 F. Supp. 2d at 1241.

With regard to the effects prong of the Analogue Act, any uncertainty as to whether particular studies support the conclusion that a substance has a "substantially similar" effect on the human body, may be relevant to the weight of evidence presented at trial but do not render the statute impermissibly vague.

With respect to defendants argument that they each did not have actual subjective notice that the alleged substances were controlled substance analogues because their chemical structure was not substantially similar to the chemical structure of a controlled substance, such argument is simply a challenge to the sufficiency of the evidence that the Government will have to present and prove at trial. After the Government presents its relevant evidence on the issue of the substantial similarity of the controlled substances and the analogues alleged in the Superseding Indictment, defendants will then have an opportunity, if they desire, to challenge the sufficiency

of the evidence by presenting their own evidence on the issue. See United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001) (explaining that "[t]he government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29" and that the Court "cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be."). Here, such a challenge is appropriate only after the Government has been afforded an opportunity to present its case-in-chief because the as-applied unconstitutional argument may very well be preempted if the Government can show actual notice to defendants. See Washam, 312 F.3d at 930 (where the Eighth Circuit agreed with the Government's argument that a defendant who has actual notice his conduct is illegal cannot claim the statute is void for vagueness as applied to him).

The case law clearly demonstrates that the Analogue Act is constitutional regardless of the fact that defendants claim they personally were not warned prior to the prosecution. Further, the Court concludes that defendants may be prosecuted for the sale or distribution of the alleged substances even though there may be a lack of consensus in the scientific community with regard to the methodology of analyzing the similarities between a controlled substance and the alleged analogue substance set forth in the Superseding Indictment.

Finally, Defendants Douglas and Brandon Franklin have asked the Court to dismiss Count Two because they allege Congress impermissibly delegated authority to the Executive Branch by conferring authority upon the Drug Enforcement Administration to temporarily schedule controlled substances pursuant to Title 21, United States Code, Section 811(h). Defendants claim that this statute is a violation of the non-delegation doctrine. (Doc. 133 at 5 and Doc. 143 at 4-5). The Supreme Court has previously rejected the same argument in Touby v. United States, 500 U.S. 160, 164-169 (1991). In Touby, the Supreme Court stated:

> We have long recognized that the nondelegation doctrine does not prevent Congress from seeking assistance, within proper limits, from its coordinate Branches. Thus, Congress does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors. So long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power."

Id. at 165 (citation omitted) (quoting J. W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409 (1928)). Consequently, this Court also finds defendants' argument unpersuasive.

## Conclusion

Here, the Court is satisfied and thus concludes that the Superseding Indictment in Counts One, Two, and Four through Fifteen, does adequately charge offenses because each of the Counts contain all of the elements of the statutes charged and fairly informs each defendant of the charges against which he must defend. Further, sufficient information is alleged in each Count to permit each defendant to plead a conviction or acquittal as a bar to subsequent prosecution. It cannot be concluded that the Counts One, Two, and Four through Fifteen, are defective. The charges in the Superseding Indictment are sufficient and defendants' motions to dismiss should be denied.

IT IS THEREFORE, RECOMMENDED that the motions to dismiss Count One of the Superseding Indictment filed by defendants Douglas Franklin (doc. 132), Dewayne Barnhart (doc. 134), Austin Nail (doc. 140), Brandon Franklin (doc. 142), Caitlyn Franklin (doc. 146), Dayne Nail (doc. 150), and Jeremy Elliott and Travis Elliott (doc. 157) be DENIED. It is further

RECOMMENDED that the motions to dismiss Count Two of the Superseding Indictment filed by defendants Douglas Franklin (doc. 133), Brandon Franklin (doc. 143), Caitlyn Nail (doc. 147), and Jeremy and Travis Elliott (doc. 156) be DENIED. It is further

RECOMMENDED that the motions to dismiss Count Two and Counts Four through Fifteen of the Superseding Indictment filed by Jeremy Elliott and Travis Elliott (doc. 139), and Dayne Nail (doc. 149) be DENIED.

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 25th day of April, 2014, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge